```
                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FRANK ROGERS,<br><br>           Plaintiff,<br><br>     v.<br><br>DEON D. HENRY, SR., <u>et al.</u>,<br><br>           Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 02-3495 (JBS)<br><br>**OPINION** |

APPEARANCES:

Mr. Frank Rogers
Cumberland County Jail
65361
54 West Broad ST
Bridgeton, NJ 08302
     Plaintiff <u>pro</u> <u>se</u>

Mr. James P. Savio, Esq.
LAW OFFICES OF JAMES P. SAVIO
First Floor
9220 Amherst Ave.
PO Box 3163
Margate, NJ 08402
     Attorney for Defendants John Campo, Stephen G. Parris, City
     of Ocean City, William Wilent, Charles Cusack, Laura Hall,
     and Richard Costigan

**SIMANDLE**, District Judge:

     Pro Se Plaintiff, Frank Rogers, brought this cause of action under 42 U.S.C. §§ 1983 and 1985 and New Jersey law, in connection with his arrest and prosecution for a drug related offense.  Plaintiff is currently incarcerated in the Atlantic County Jail, Mays Landing, New Jersey.

     Before the Court is a motion for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P., brought by Defendants John Campo,

Stephen G. Parris, City of Ocean City, William Wilent, Charles Cusack, Laura Hall, and Richard Costigan.  Plaintiff and Defendants have filed briefs and responses in opposition to and in support of the motion, respectfully.  [Docket Items 120, 130, 133, 136 and 139].  For the following reasons, Defendants' motion will be granted.

**I.  Background**

In May of 2000, Defendant Deborah Moore came to the Ocean City Police Department to file an assault complaint against Plaintiff.  (Def. Br. at Ex. F.)  Moore testified that Plaintiff hit her in the face and kicked her in the ribs, breaking one of them.  (Id.)  Moore was then led to Defendant Detective Campo who, according to Moore, asked her to withhold the charges and work with the police to catch Plaintiff selling drugs.  (Id.)

Over the next three months, Moore worked with the Ocean City Police to catch Plaintiff in a series of illegal drug sales.  It appears from Moore's testimony that on some of these occasions, she actually purchased drugs from Plaintiff's brother.  However, Moore testified that at no point did she tell Campo that she was obtaining drugs from anyone other than Plaintiff.  (Def. Br. at Ex. F.)  She also testified that the police did not force her to cooperate with them over this three month period.  (Id.)

Plaintiff testified that on August 3, 2000 he went to Somers Point, New Jersey to purchase marijuana for Moore because she was

HIV positive and needed the marijuana so she could eat. (Def. Br. at Ex. E.) He also intended to purchase cocaine for Moore's friend "Boyd," who Plaintiff discovered later was in fact Det. Henry. (Id.) The events of August 3, 2000 formed the basis of Plaintiff's guilty plea and prison sentence. (Id. at Ex. B.)

A few weeks later, on or about August 15, 2000, Plaintiff and Defendants Moore and Henry, who was still undercover, again traveled to Somers Point to purchase cocaine. Moore testified that, fearing that Plaintiff was actually buying baking soda rather than cocaine, she brought her own cocaine concealed within her bra. (Def. Br. at Ex. F.) She then switched the bag Plaintiff purchased with her own cocaine because, in case he purchased baking soda, she wanted the "charge to stick." (Id.) Moore testified that she never told the police officers about switching the bags or that she was lying. (Id.) The charges against Plaintiff regarding August 15, 2000 were dropped as part of his plea agreement. (Def. Br. at Ex. B.)

On April 30, 2002, New Jersey Municipal Court Judge Richard A. Russell held a probable cause hearing on the criminal charges pursuant to the New Jersey Court Rules. Judge Russell determined that Plaintiff failed to produce sufficient proof to establish the existence of probable cause for the court to believe that Campo manufactured any false statements or false reports in regard to the charges against Plaintiff. (Def. Br. at Ex. C.)

Judge Russell found that Campo might have been provided with some false information, but nothing demonstrated that Campo manufactured any evidence.  (Id.)

Plaintiff has brought the instant action alleging, among other things, malicious prosecution and conspiracy to commit the same under 42 U.S.C. §§ 1983 and 1985.  The Honorable Joel B. Rosen, U.S. Magistrate Judge, granted Defendants' and Plaintiff's motions to compel discovery in January and April of 2004, respectfully. [Docket Items 88 and 93].  Plaintiff was granted, in part, a second motion to compel discovery in April of 2005. [Docket Item 134].  Plaintiff was granted an extension to file a supplemental submission in October of 2005. [Docket Item 153]. However, Plaintiff's most recent submission, received by the District Court on November 15, 2005, fails to raise any issue of material fact to support his claims, as now discussed.

**II. Discussion**

Defendants have filed a motion for summary judgment pursuant to Rule 56 of the Fed. R. Civ. P.  Under Rule 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986)(citations omitted).  It is true that in deciding whether

there exists a disputed issue of material fact, the Court must view the facts asserted by the non-moving party in the light most favorable to that party.  See Aman v. Cort Furniture Corp. 85 F.3d 1074, 1080-81 (3d Cir. 1996).  However, a non-moving party may not rest upon mere allegations, general denials, or vague statements.  Bixler v. Central Penn. Teamsters Health and Welfare Fund, 12 F.3d 1292, 1302 (3d Cir. 1993).  To avoid summary judgment, the nonmoving party must produce more than a "mere scintilla" of evidence to demonstrate a genuine issue of material fact.  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

For reasons to follow in this opinion, this Court has determined that no genuine issue of material fact exists as to any of Plaintiff's claims.  Accordingly, Defendants are entitled to judgment as a matter of law.

    A.    <u>Plaintiff Does Not Have a Viable False Arrest or False Imprisonment Claim Against the City of Ocean City</u>

Local governing bodies can be sued directly under Section 1983 for "monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 (1978).

"Congress did not intend municipalities to be held

5

> liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." In particular, a municipality cannot be held liable solely because it employs a tortfeasor--or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."

Id. at 691.  Indeed, an official policy must be "the moving force of the constitutional violation" in order to establish the liability of a government body under Section 1983.  Polk Country v. Dotson, 454 U.S. 312, 326 (1981) (quoting Monell, 436 U.S. at 694.)

Moreover, municipal liability attaches only where execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.  Monell, 436 U.S. at 694.  In the case of either policy or custom, a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.  Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  Proof of the mere existence of an unlawful policy or custom is necessary but not sufficient to maintain a Section 1983 action.  Id.  A plaintiff bears the additional burden of proving that the municipal practice was the proximate cause of the injuries suffered.  Id.

Here, Plaintiff alleges that the City of Ocean City should be held responsible for his alleged false arrest and false imprisonment.  However, Plaintiff has failed to present any

6

evidence that would permit a reasonable jury to conclude that either requirement for municipal liability under Section 1983 has been satisfied.  Plaintiff has presented no evidence that Ocean City implemented a policy or custom which violated Plaintiff's civil rights.  Additionally, Plaintiff has not even alleged that a policy or custom proximately caused him a civil rights injury.  Accordingly, Plaintiff does not have an actionable claim against the City of Ocean City, which is entitled to summary judgment in its favor.

    B.    <u>Plaintiff's Claim for Supervisory Liability in Violation of 42 U.S.C. § 1983 Against Captain Parris Should Be Dismissed</u>

In order to render a police officer personally liable for the acts of his subordinates under Section 1983, a plaintiff must show that the officer participated in the violation of the plaintiff's rights, directed others to violate them or had knowledge of and acquiesced in the violation.  <u>Baker v. Monroe Twp.</u>, 50 F.3d 1186, 1190-91 (3d Cir. 1995).  Beyond bare assertions, Plaintiff has presented no evidence that Captain Parris participated in, directed or had knowledge of and acquiesced in the violation of Plaintiff's rights.  A party opposing summary judgment cannot rest upon the "mere allegations or denials of the adverse party's pleading."  Fed. R. Civ. P. 56(e). Indeed, the party opposing summary judgment must submit documentation such as affidavits or depositions setting forth

"specific facts showing that there is a genuine issue for trial." Id. Accordingly, Plaintiff's claim for supervisory liability against Captain Parris should be dismissed.

    C.   <u>Plaintiff Cannot Prove the Necessary Elements of a Section 1985 Claim</u>

The elements of a cause of action under 42 U.S.C. § 1985(3) are (1) a conspiracy by the defendants; (2) with a purpose of depriving the plaintiff of equal protection of the laws of equal privileges and immunity under the law; (3) a purposeful intent to discriminate; (4) action by the defendants under color of State law or authority; and (5) injury to the person or property of the plaintiff or his deprivation of a right or privilege of a citizen of the United States resulting from acts in furtherance of the conspiracy. <u>Colon v. Grieco</u>, 226 F. Supp. 414, 418 (D.N.J. 1964). This Court has held that one of the elements of a section Section 1985 claim is that the plaintiff must prove that there was some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. <u>Morales v. Busbee</u>, 972 F. Supp. 254, 267 (D.N.J. 1997) (quotations omitted) (citing <u>United Brotherhood of Carpenters v. Scott,</u> 463 U.S. 825, 829 (1982)).

Plaintiff's amended complaint failed to even assert that Defendants' alleged conduct was motivated by class based, invidiously discriminatory animus. Plaintiff's brief asserts that the alleged conspiracy was based upon racial animus, although he cites no evidence that this was the case. (Pl. Br.

8

at 38.)  Indeed, Plaintiff's argument is based almost solely on the conclusory statement that officials treat African American people differently in Ocean City.  (<u>Id.</u>)  Plaintiff has presented no admissible evidence from which a reasonable jury could conclude that he was the victim of a racially-motivated conspiracy to deprive him of his civil rights; at most, his evidence entails the acts of his former friend who attempted to hurt him in revenge for his assault upon her, by her use of dishonest tactics that were unknown to the detective and other law enforcement personnel.

    D.   <u>Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress</u>

Before this Court can decide whether Plaintiff can satisfy the elements of Intentional Infliction of Emotional Distress ("IIED") or Negligent Infliction of Emotional Distress ("NIED"), it must determine whether Plaintiff has met the threshold limitation contained in the New Jersey Tort Claims Act (NJTCA).  The NJTCA provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of <u>permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00</u>.

N. J. S. A. 59:9-2 (2000) (emphasis added).[1]  In order to recover damages from a public entity or employee, "a plaintiff must prove by objective medical evidence that the injury is permanent." Brooks v. Odom, 150 N.J. 395, 402-03 (1997).

Plaintiff has not presented any evidence that he underwent medical treatment or psychological treatment, and accordingly has not presented any evidence of related monetary expenses.  Also, Plaintiff has not offered any evidence as to the permanency of his alleged injuries.  As such, Plaintiff cannot prove that he has met the threshold requirement to bring an IIED or NIED suit against Defendants under New Jersey law.  Therefore, Plaintiff's claims for intentional infliction of emotional distress and negligent infliction of emotional distress must fail because Plaintiff has submitted no evidence that he meets the damages threshold under the New Jersey Tort Claims Act.

    E.   Malicious Prosecution

The Supreme Court in Albright v. Oliver, 510 U.S. 266 (1994), set the framework for Section 1983 malicious prosecution

---

[1] The statute further provides:

> For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

N. J. S. A. 59:9-2 (2000)

jurisprudence.[2] Although the Supreme Court did not directly address the issue, the Third Circuit has interpreted Albright as requiring that a viable Section 1983 claim for malicious prosecution be based on a federal constitutional violation rather than state common law. DiBella v. Borough of Beachwood, 407 F.3d 599, 602 n.1 (3d Cir. 2005) (citing Merkle v. Upper Dublin School Dist., 211 F.3d 782 (3d Cir. 2000)). Accordingly, to prevail in a Section 1983 malicious prosecution action, a plaintiff must show: (1) the defendant initiates a criminal proceeding; (2) which ended in the plaintiff's favor; (3) which was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing the defendant to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

However, the Second Circuit has held that a plaintiff alleging the constitutional tort of malicious prosecution in an

---

[2] Defendants assert that the elements of liability for the Constitutional tort of malicious prosecution pursuant to 42 U.S.C. § 1983 coincide with those of the common law tort. (Def. Br. at 13.)  Defendants have cited precedent which seems to establish the requirements for malicious prosecution: (1) the defendant initiates a criminal proceeding; (2) which ended in the plaintiff's favor; (3) which was initiated without probable cause; and (4) defendants acted maliciously or for a purpose other than bringing the defendant to justice. Lee v. Mihalich, 847 F.2d 66, 70 (3rd Cir. 1988).  However, for reasons explained in this opinion, these factors alone are no longer sufficient to establish a Section 1983 malicious prosecution claim.

action pursuant to Section 1983 must establish termination of the prosecution in his favor in accordance with applicable state law. Hygh v. Jacobs, 961 F.2d 359, 367 (2d Cir. 1992). This Court finds this Second Circuit's analysis persuasive in this case. It is well settled New Jersey law that in circumstances where a criminal charge is withdrawn or a prosecution is abandoned pursuant to an agreement or compromise with the accused, the termination is viewed as indecisive and insufficient to support a cause of action for malicious prosecution. Thomas v. New Jersey Institute of Technology, 178 N.J. Super. 60 (Law Div. 1981) (citing Mondrow v. Selwyn, 172 N.J. Super. 379, 384 (App. Div. 1980)). Other district courts have similarly held that, for purposes of Section 1983 malicious prosecution claims, charges dropped as the result of a compromise or negotiation do not amount to proceedings ending in the plaintiff's favor. See e.g. Casanova v. City of Brookshire, 119 F. Supp. 2d 639, 655 (S.D.Tex. 2000) (stating that any situation in which the accused "agreed to do something in exchange for the government's dropping the charges" does not constitute a favorable termination); Coakley v. Jaffe, 49 F. Supp. 2d 615, 621-22 (S.D.N.Y. 1999) (holding that proceedings did not terminate favorably for plaintiff where charges were dropped as a result of a plea agreement). Here, in addition to asserting that Defendants "clearly had probable cause to arrest the plaintiff" and that

"the plaintiff will be unable to prove that the defendants acted with malice," Defendants argue that the proceeding did not terminate in Plaintiff's favor. (Def. Br. at 13.) For the following reasons, this Court agrees.

Plaintiff was charged with counts of selling cocaine on both August 3, 2000 and August 15, 2000. However, the counts of Plaintiff's indictment stemming from the events of August 15 were dropped as part of a guilty plea agreement stemming from the events of August 3. (Def. Br. at Ex. B.) Because these charges were dropped pursuant to a plea agreement, they cannot be said to have terminated in the plaintiff's favor.

The District of South Carolina has held that this rule shall not apply where such a plea or compromise is not knowingly or voluntarily made. George v. Leonard, 71 F. Supp. 665, 666 (D.S.C. 1947). Certainly, this Court agrees that plea agreements made under coercion or duress should not foreclose the possibility of a malicious prosecution claim. In such a case, a dismissal of the charges would be indicative of a plaintiff's claim of actual innocence. However, there is nothing in the record which suggests that Plaintiff's guilty plea was the result of coercion or duress, or that Defendants acted "maliciously." Plaintiff has failed to present any evidence beyond the assertions made in pleading that Defendants lacked probable cause to arrest him or that he was actually innocent. Nothing in the

13

record would lead this Court to the conclusion that the charges related to August 15 were improper, or used to leverage Plaintiff's guilty plea.  In fact, at a probable cause hearing on April 30, 2003 before Municipal Court Judge Richard A. Russell, Judge Russell found that there was no probable cause to believe that Detective Campo manufactured any false statements or any false reports in regard to the charges brought against Plaintiff. (Def. Br. at Ex. C.)

Plaintiff has not presented sufficient evidence to support his claim of malicious prosecution.  Because charges against Plaintiff were dropped pursuant to a guilty plea, those proceedings cannot be said to have terminated in his favor. Nothing in the record indicates that this guilty plea was coerced or that Defendants acted "maliciously."  Accordingly, in viewing the evidence a light most favorable to Plaintiff, there is no genuine issue of material fact and this Court finds for the Defendants as a matter of law.

    F.   <u>Malicious Abuse of Process</u>

Under New Jersey law, the elements of a malicious abuse of process claim are (1) an "ulterior motive" for the use of process and (2) "some further act after an issuance of process representing the perversion of the legitimate use of the process." <u>Securimetrics v. Iridian Techs., Inc.</u>, 2005 WL 1140689, at *5 (D.N.J. May 13, 2005).  A "further act" must be used "to accomplish an end outside the legitimate purview of the

14

litigation itself." Id. (citing Penwag Prop. Co. v. Landau, 148 N.J. Super. 493, 499 (App. Div. 1977)). Because of the "further act" requirement, "coercive action of bad motives or intent prior . . . to the institution of the lawsuit do not suffice to expose a plaintiff to a cause of action for malicious prosecution." Id.

Plaintiff alleges that Defendants set in motion legal process for an improper ulterior motive, namely that Defendants conspired to manufacture evidence and prosecute him on drug charges so he would serve more prison time than would have resulted from original assault charges. (Def. Br. at 24.) However, an action for malicious abuse of process "lies for the improper, unwarranted, and perverted use of process after it has been issued . . . ." Galbraith v. Lenape Regional High School District, 964 F. Supp. 889, 897 (D.N.J. 1997). "Bad motives or malicious intent leading to the institution of a civil action are insufficient to support a cause of action for malicious abuse of process." Id. at 897-98. To succeed on a malicious abuse of process claim, a plaintiff must demonstrate some coercive or illegitimate use of the judicial process. Id.

Here, Plaintiff argues that by failing to follow up on Moore's assault complaint, and instead working with her to catch Plaintiff in the act of selling drugs, Defendants "pervert[ed] the criminal and civil process." (Def. Br. at 24.) However, at that stage in the investigation, no process had been issued.

Even if the Defendants had malicious intent when they arrested the plaintiff, such a "bad motive" will not alone substantiate a malicious abuse of process claim.  In this case, the only post-service or "further" act that Plaintiff could reasonably assert to be an abuse of process would be if Defendants used the August 15 charges to coerce Plaintiff into pleading guilty to the events of August 3.  Use of process for the purpose of coercing a guilty plea out of an innocent person would certainly be an act outside the "legitimate purview" of the litigation.  Plaintiff neither raises this argument in his brief nor presents any admissible evidence that his guilty plea was in fact coerced.  Again, Judge Russell found that there was no probable cause to believe that Detective Campo manufactured any false statements or any false reports in regard to the charges brought against Plaintiff. (Def. Br. at Ex. C.)  Accordingly, Plaintiff has not raised an issue of material fact as to whether Defendants initiated process against Plaintiff for an improper, unwarranted or perverted use, and therefore Plaintiff's claims fail as a matter of law.

    G.   <u>False Imprisonment and False Arrest</u>

Plaintiff is barred from bringing claims of false imprisonment and false arrest against the defendants because to do so necessarily implies that his conviction, based upon his guilty plea, was wrongful.  The Supreme Court has held:

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in

16

> favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Heck v. Humphrey, 512 U.S. 477, 486-87 (1994).

In New Jersey, a guilty plea forms the basis for a conviction. State v. Parsons, 341 N.J. Super 448, 456 (App. Div. 2001) (holding that a guilty plea is more than an admission of past conduct, but represents as well the defendant's consent that judgment of conviction may be entered without a trial). Here, Plaintiff pled guilty to distributing CDS in the third degree and terroristic threats in the third degree. (Def. Br. at 17.) If Plaintiff were allowed to bring claims for false imprisonment and succeeded, it would necessarily imply that his conviction, based on his guilty plea, was wrongful.

Plaintiff was arrested on August 22 for the events of both August 3 and 15, 2000. He pled guilty to the charges related to August 3 and the charges relating to the events of August 15 were dropped as part of his guilty plea. With regard to the charges concerning August 3, 2000, unless Plaintiff can make some showing that his conviction, pursuant to his guilty, was reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called in question by a writ of habeas corpus,

he is precluded from bring these claims through a Section 1983 suit. Plaintiff has not presented any evidence which would suggest that his conviction was improper.

However, Plaintiff argues that his false arrest and false imprisonment claims are based upon the investigation and arrest warrant related to the events of August 15, 2000. Even though Plaintiff is not precluded from bringing such a claim with regard to the events of August 15, Defendants are immune from claims of false arrest and false imprisonment in this case. As police officers, Defendants are afforded qualified immunity. Anderson v. Creighton, 483 U.S. 635, 639 (1987). Accordingly, they are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Id. at 638. A police officer has the shield of immunity except when probable cause is so "lacking in indicia . . . as to render official belief in its existent unreasonable." Malley v. Briggs, 475 U.S. 335, 344-45 (1986).

Plaintiff has failed to present any evidence beyond the bald assertions made in his pleading that Defendants lacked probable cause to arrest him. Plaintiff bases his false arrest claims on an alleged conspiracy between Moore and the police. (Pl. Br. at 36.) However, Moore testified that she did not tell the police at any point in time that she had been lying to them or that

18

plaintiff did not sell drugs.  (Def. Br. at Ex. F.)  She further testified that Detective Campo never forced her action from May through August with respect to the drug buys.  (Id.)  Also, at a probable cause hearing on April 30, 2003 before Municipal Court Judge Richard A. Russell, Judge Russell found there was no probable cause to believe that Detective Campo manufactured any false statements or any false reports in regard to the charges brought against Plaintiff.  (Def. Br. at Ex. C.)

Plaintiff has failed to present any issue of material fact as to whether Defendants lacked probable cause to arrest him.  The best evidence of any wrong-doing on the part of the officers in this case are admissions signed by Defendant Moore that she agreed to "set up" Plaintiff because she was mad at him and that she never bought drugs from him.  However, these admissions contradict prior sworn testimony and are not relevant to what the officers believed at the time the arrest was made.  This "mere scintilla" of evidence is not enough to overcome a motion for summary judgment.  Accordingly, Defendants are immune from suit and Plaintiff's claims of false arrest and false imprisonment fail as a matter of law.

### III. Conclusion

Despite begin given ample time to conduct discovery and having been granted extensions to submit supplemental materials, Plaintiff has failed to raise any issue of material fact to

overcome Defendants' motion for summary judgment.  After viewing the facts in this matter in the light most favorable to Plaintiff, this Court has determined that Defendants are entitled to judgment as a matter of law.  For the foregoing reasons, Defendants' motion for summary judgment will be granted.

    The accompanying Order is entered.

**December 23, 2005**           **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                   United States District Judge